UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 06cr001 (ESH) |
| v. | : | |
| JACK A. ABRAMOFF | : | |

JACK ABRAMOFF'S MOTION TO FILE A SUR-REPLY AND SUR-REPLY IN RESPONSE TO THE GOVERNMENT'S MOTION FOR IMMEDIATE MODIFICATION OF RESTITUTION ORDER

Abbe David Lowell, Esq.(#358651)
Pamela J. Marple, Esq. (#462921)
Christopher D. Man, Esq. (#453553)
MCDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, D.C. 20005
(202) 756-8000

Because the Government's Reply Brief makes new recommendations regarding the modification of Mr. Abramoff's Restitution Order, Mr. Abramoff seeks the Court's permission to file this Sur-Reply to address those new points. Specifically, Mr. Abramoff addresses below three newly suggested modifications while noting that the legal theory set forth by the Government to support the proposed modifications raises issues and significant concerns, particularly among Mr. Abramoff's creditors.

**Government Recommendation Number 3**

Turning to the Government's least controversial recommendation first, the Government's Recommendation Number 3 is that Mr. Abramoff provide <u>the Court</u> with notice of any additional assets or debt that he or his immediate family incurs valued at more than $2,500. Mr. Abramoff has no objection to the substance of this request, particularly because he already is required to provide such notice to the Government, but he objects procedurally on the grounds that notice to the Court would involve the judicial process unnecessarily.

Pursuant to his Cooperation Agreement with the Government, Mr. Abramoff is required to provide, and has been providing, notice to DOJ with respect to his assets and debts, including notice of incoming and outgoing funds. If there are disputes, the parties can and should attempt to resolve them before involving the Court. If DOJ would like the timing of the notice it receives to be amended, for example, Mr. Abramoff would agree to such a change. That said, Mr. Abramoff does not object to providing the Court with such a notice concerning his assets and debts if the Court would like that information.

Mr. Abramoff <u>does</u> object to the language of the Government's recommendation, however, because it would require notice of the assets or debts of "his immediate family." Mr. Abramoff is the only member of his family who has been convicted of a crime and is the only

1

member of his family subject to this Court's Restitution Order. It is not appropriate to place any burden on his family members to inform Mr. Abramoff of their personal finances, so that he can in turn inform this Court or the Government. Whatever debts or assets his wife or children, two of whom are working now, acquire in their personal capacity is their own business. They should not be required to disclose that information to the Government, this Court or even Mr. Abramoff.

### Government Recommendation Number 2

The Government also requests that the Court require Mr. Abramoff to obtain Court approval before he or any member of "his immediate family" spend more than $2,500. Again, Mr. Abramoff does not believe this modification is necessary, as there is no reason for the Court to be involved in micro-managing Mr. Abramoff's personal finances. Courts typically avoid micromanaging a defendants' personal finances by specifying set dollar amounts or percentages of income that must be paid toward restitution, while leaving a defendant free to decide how they spend the remainder of their money to support themselves and their families. There is no suggestion that Mr. Abramoff has made any unwise or extravagant expenditure, and there is no reason to deviate from the norm by imposing such an invasive and burdensome requirement here. Up until the issue of this one-time tax refund, there had never been a suggestion that the restitution order was not working as it was supposed to.

Mr. Abramoff also objects to imposing this requirement on members of "his immediate family." His wife and two of his children are earning their own money, and none are obligated to obtain Mr. Abramoff's approval to spend their own money or to even tell him how they have done so. Moreover, because no member of his immediate family has been convicted of any crime and none are subject to this Court's Restitution Order, it would be inappropriate to place such a burden on them as obtaining approval from the Court before spending the money they

2

themselves have earned.

Should the Court decide to place such an obligation upon Mr. Abramoff, he would ask that an exception be made for the payment of his mortgage. His mortgage payment is roughly $2,500 per month but it fluctuates slightly based on LIBOR. It would be an unnecessary burden for him to seek approval from this Court in advance to pay such a necessary monthly living expense, simply because the mortgage payment due may fluctuate slightly over the $2,500 threshold.[1]

**Government Recommendation Number 1**

The Government asks that the remainder of the money from the tax refund received from the Federal Government – $175,189 – be paid to the Clerk of Court to be divided evenly between the restitution creditors in this case and those in the Florida case. By contrast, Mr. Abramoff seeks the Court's permission to send cashier's checks that already have been obtained for $50,000 to the State of Maryland for back taxes, $22,000 to Montgomery County for real estate taxes and $5,000 for the Hebrew Academy for educational expenses. These payments are necessary living expenses, and should be allowed. Indeed, the Government's suggestion that a Federal Court should preclude the Abramoffs from complying with their legal obligations to pay state and local taxes is outright inappropriate. With these payments, $93,189 would remain

Of the $93,189, Mr. Abramoff also requests that he be allowed to spend up to $40,000 repairing the roof of his house. (Ex. A (roofing estimate of $39,400).) This situation is becoming dire. As the Court undoubtedly is aware, D.C. has encountered substantial rain in recent weeks and the leaking at the Abramoff's home is substantial. Repair crews that have

---

[1] The example of the mortgage payment supports our argument that such micro-managing of Mr. Abramoff's finances by the Court would be unwise. Mr. Abramoff also would need to ask for Court permission for a host of expenditures that DOJ would likely approve without comment, such as medical bills, repairs to the house that are required to conform to Code, etc.

3

inspected the house report that the support beams are wet. If those beams begin to rot (which happens quickly when consistently wet), the house will become unsafe to live in and the cost of repairing the house will increase dramatically. And if the roof is not repaired, this substantial asset will be destroyed. The Court should not impose conditions of restitution that will leave a family homeless or destitute.

The Abramoff's hope is that by making the roof repairs they can get the house into a condition in which it can be sold. They hope that the sale of the home will generate proceeds they could use to find more affordable housing and free up money to repay creditors. Not only could the sale of the home generate cash, but finding more affordable housing would allow them to spend less money on housing which would increase their ability to repay creditors. Thus, this $40,000 investment in a new roof is in the interest of all of the Abramoff's creditors, including the restitution creditors.

Of the roughly $50,000 that would then remain, the Abramoff family should be allowed enough to live on. Prior to Mr. Abramoff entering prison, the family had depleted most of its assets paying restitution creditors, legal fees and ordinary living expenses for several years while Mr. Abramoff was unemployed. In addition, the family was only able to meet their financial obligations by borrowing funds (some of which are now being repaid). This vicious cycle of borrowing for basics and then needing funds to repay the loans can be broken if part of the refund can be used. Their ordinary living expenses since Mr. Abramoff has been in prison have eclipsed Mrs. Abramoff's meager salary, which has driven them further and further into debt. Their only hope has been that this financial hole would be filled by the Government providing them with the tax refund they are owed. The money from the tax refund would act as a financial bridge to support ordinary and reasonable living expenses of the family until Mr. Abramoff is

4

released from prison and can resume working.

This is not a situation where the existing Restitution Order preserves a balance that allows the family to get by simply by making limited restitution payments. The Abramoff family lacks sufficient income to survive on and must deplete its assets. Just as this Court would not have forced the Abramoffs to deplete assets in existence at the time of sentencing to pay restitution if those assets were needed to pay ordinary living expenses, the Court should not deprive the Abramoffs of their tax refund. The tax refund is no windfall, like lottery winnings or an inheritance. It was money earned prior to sentencing that had been over-paid to the government, and the payment of this refund was anticipated at the time of sentencing. Indeed, the payment of the tax refund is something the Abramoff family has depended upon and, until now, the Government never suggested this expectation was erroneous.

The Abramoffs have attempted to pay their taxes and pay some of their largest creditors as much as they can, particularly their accountants and current law firm which had not previously been paid, while holding on to what they will need to survive on while Mr. Abramoff is incarcerated. That gap may be as much as a year-and-a-half.[2] The Court also should be mindful that much of the money the Abramoffs seek to retain will be used to pay back-taxes to the State of Maryland. The wild card in this equation is that the amount of taxes owed has not yet been determined, but will likely exceed $100,000, maybe by a little and maybe by a lot. As explained above, the Abramoff's seek the Court's consent to pay $50,000 toward that debt now. Once the final amount owed is determined, the remainder of what is owed will need to be paid out of the tax refund. Accounting for the taxes that need to be paid, it is not clear how much money will be available for the Abramoffs to close the gap between what little Mrs. Abramoff is now earning

---

[2] The family is hopeful for an earlier release date, but the Bureau of Prisons currently calculates Mr. Abramoff's release date as December 1, 2011.

5

and the substantially higher amount the family is spending on ordinary expenses. It may very well be that all of the remaining money is used simply paying back taxes.

Accordingly, Mr. Abramoff proposes that – at least for now – the Court allow his family to retain what is left of the tax refund to pay taxes and cover ordinary living expenses for the next year. It may be, and Mr. Abramoff certainly hopes it is the case, that his existing tax liabilities will be on the lower side of the estimates, that his house can be sold for a healthy profit, and that his family will receive additional substantial tax refunds. If that occurs, and Mr. Abramoff is in better financial shape upon his release from prison than he is now, it may be appropriate for the Court to require a lump-sum payment of his assets to pay restitution creditors. But there is no reason to place the Abramoff family at risk by acting prematurely. By waiting and gathering more financial information, the Court can better ensure that any modifications to Mr. Abramoff's Restitution Order are equitable.

**<u>Future Tax Refunds</u>**

The Government's position that any additional asset Mr. Abramoff receives while in prison be paid in full to restitution creditors is problematic and, ultimately, not in the interest of the restitution creditors or anyone else. Mr. Abramoff owes his accountants, and to a lesser extent his lawyers, substantial amounts for services they continue to render in negotiating with the State of Maryland to reduce his tax liabilities and to negotiate larger tax refunds from the IRS. This work is ongoing, and it is important. For example, his accountants have persuaded the IRS that several hundred thousand dollars it originally suggested were owed in taxes, in fact, were not owed. The current understanding is that Mr. Abramoff will pay 20% of any tax refund he receives toward the accountants who are working to obtain the refunds. Without the assurance of payment, Mr. Abramoff's accountants will not proceed with the work and, without

6

their assistance, there may be no refund at all.

Mr. Abramoff asks that the Court make it clear that his accountants can receive 20% of any tax refund they recover and that the Court will make some equitable allocation toward the payment of outstanding attorneys' fees to be fair to those who are doing the work to obtain the tax refunds, and work that is in everyone's interest. Mr. Abramoff's restitution creditors are better off receiving a percentage of something, rather than 100% of nothing. The Court does not need to decide how future tax refunds should be spent with further specificity at this time. If and when the time comes that such refunds are paid, the Court will be in a better position to assess the Abramoff's finances and decide how such a refund should be equitably divided.

## CONCLUSION

Mr. Abramoff requests that the Court allow the proposed payments to existing creditors and to retain the remainder of the IRS tax refund to pay back-taxes to the State of Maryland, to make roof repairs and pay ordinary living expenses. Mr. Abramoff, of course, will inform DOJ concerning his financial situation and notify DOJ as to any sizeable expenditures. Mr. Abramoff also requests that his accountants and lawyers working to obtain future refunds be paid for that work out of any future tax refunds that are received..

Mr. Abramoff does not believe there is any need for the Court to modify its Restitution Order at this time. In the event the money retained from the existing tax refund proves to be more than the family needs to cover ordinary living expenses, as discussed and negotiated with DOJ, the Court can determine at that time how to apportion the funds in an equitable manner consistent with Mr. Abramoff's obligations.

June 19, 2009                                    Respectfully submitted,


                                                    Abbe David Lowell, Esq.(#358651)
                                                    Pamela J. Marple, Esq. (#462921)
                                                    Christopher D. Man, Esq. (#453553)
                                                    McDermott Will & Emery LLP
                                                    600 13th Street, N.W.
                                                    Washington, D.C.  2005
                                                    (202) 756-8000

# Exhibit A

# PROPOSAL

**P.J.'s Roofing**
MHIC#95751
103 Bost Court
Thurmont, MD 21788
Phone 301-271-7773

DATE: 4/29/09

**TO:**
Pam
812 Edelblut Dr
Silver Spring, MD 20901
202-213-5414

**REGARDING:**
Roof Replacement Estimate

**COMMENTS OR SPECIAL INSTRUCTIONS:**
Feel free to call with any questions. Thank you for your time.

| TERMS |
|---|
| 1/3 DEPOSIT, BALANCE UPON COMPLETION OF WORK |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| | -remove existing cedar shakes from roof | | |
| | -install winterguard to eaves and valleys of roof | | |
| | -install 15lb tar paper to roof deck | | |
| | -install cream colored aluminum drip edge to entire perimeter of roof | | |
| | -install a Certainteed Landmark 30 year shingle to roof deck | | |
| | -install new pipe flashings double booting pipe collars | | |
| | -install new wall and brick flashings cutting into the brick | | |
| | -reuse existing skylights and skylight flashings | | |
| | -install a Shinglevent II ridge vent | | |
| | -install hidden screw in hangers to gutters as needed | | |
| | -remove all debris from jobsite | | |
| | $39,400 | | |
| | *to replace existing skylights with new Velux skylights(except for skylight on top of pyramid) $4,800 | | |
| | P.J.'s Roofing provides a seven year labor warranty | | |
| | | SUBTOTAL | |
| | | SALES TAX | |
| | | SHIPPING & HANDLING | |
| | | TOTAL DUE | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 06cr001 (ESH) |
| v. | : | |
| JACK A. ABRAMOFF | : | |

## PROPOSED ORDER

On May 21, 2009, the government moved to modify the restitution order dated September 9, 2008 ("Restitution Order") in the above-captioned action and also requested that available funds from a federal tax refund provided to defendant earlier in the month be held in abeyance. On May 26, 2009, the Court ordered Mr. Abramoff and his family to stop spending the money received from their federal tax refund and to provide additional accounting documentation regarding how the tax refund money has been spent. Having considered the government's motion and the defendant's response, the Court hereby **ORDERS** that

1. The spending restrictions imposed by the Court's May 26, 2009 Order are lifted, but Mr. Abramoff remains subject to the September 9, 2009 Restitution Order. Consistent with that Restitution Order, Mr. Abramoff is permitted to spend the money received from the tax refund on his family's ordinary living expenses, including satisfying state and local tax obligations, making necessary roof repairs on his home, and the other expenses Mr. Abramoff has proposed in his Response Brief and Sur-Reply.

2. Defendant shall provide notice to the Court and U.S. Department of Justice of future tax refunds received, if any, within five calendar days of receipt and ten calendar days prior to expending any such funds. If the government believes the receipt of any such tax refund provide Mr. Abramoff with more money that he needs to support the ordinary living expenses of himself and his family, after the payment of reasonable fees for the professional services used to obtain the refund, the government may move the Court to modify the Restitution Order.

**SO ORDERED**

_____
ELLEN SEGAL HUVELLE
United States District Court Judge

Date: June __, 2009