IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**JACK A. ABRAMOFF** | **06cr001 (ESH)** |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION FOR ORDER
TO SHOW CAUSE WHY DEFENSE COUNSEL SHOULD NOT BE DISQUALIFIED
AND TO STAY BRIEFING SCHEDULE PENDING RESOLUTION**

On February 7 and 14, 2014, the government seized a total of $448,135 in the form of two tax refunds due to Mr. Abramoff. This action, as the defense has attempted to point out to the government for the past three months, constituted a violation of both this Court's September 4, 2008, Restitution Order as well as the government's representations made to this Court at a hearing on this identical issue on August 11, 2009. Rather than respond to the substance of Mr. Abramoff's motion, the government has instead raised an objection to counsel's involvement in this matter and requested that the briefing schedule for Mr. Abramoff's Motion to Return Seized Funds be stayed. As the government fully understands, this delay causes great prejudice to Mr. Abramoff. The government's objection to counsel's involvement in this case, raised for the first time more than three months after being aware of counsel's representation of Mr. Abramoff in this matter, is not only frivolous, it is brought simply to seek tactical advantage and to inflict additional punishment on Mr. Abramoff.

ARGUMENT

I.     The Government's Motion is Frivolous

The government's Motion consists largely of boilerplate language regarding the propriety of attorneys entering appearances in matters they may have worked on in prior employment. The defense takes issue with none of this language or the standards enunciated. What is remarkable about the government's Motion is the government's inability to point to any fact that would provide a basis for its Motion. The government does not cite a single fact that counsel learned – or even theoretically, could have learned – that might have any bearing on the instant matter before the Court. Instead, the government simply points to the obvious overlap between the factual background of the Safavian and Abramoff prosecutions, asserts that the two matters are "substantially related" and, apparently, hopes the Court does not notice that the matter presently before the Court – whether the government's February, 2014, seizure of Mr. Abramoff's tax refund was improper – has absolutely no connection with anything counsel did, or could have done, when working for the government in 2007. The government would prefer the Court to focus on the purely academic question of whether counsel's prior work at the Department of Justice prosecuting David Safavian would prohibit counsel from representing Mr. Abramoff in a matter *concerning the merits of the government's underlying conspiracy case* against him.[1] This

---

[1] Even under the government's misguided analysis of the relevant factual matters at issue, it concedes that its Motion is not necessarily meritorious. *See* Government Mot. For Order to Show Cause at 5 ("We appreciate that this [] question is not subject to ready resolution."). In any event, given how factually interrelated aspects of the Safavian and Abramoff cases were, counsel would not have agreed to enter an appearance in this matter if, for example, Mr. Abramoff was attempting to withdraw his guilty plea or in any way attacking the merits of the government's case against him. Although Counsel agrees with the government that it is not at all clear-cut that such a representation would be improper, it is certainly close to the line. Of course, the issue at hand, regarding Mr. Abramoff's tax refund, is not within miles of the line, and *is* subject to ready resolution.

question is a red herring; the instant matter concerning the seizure of Mr. Abramoff's tax refund has nothing whatsoever to do with the underlying conspiracy case to which Mr. Abramoff long ago pleaded guilty and served his sentence.

Moreover, the issue presently before the Court does not involve a dispute with contested facts.  The Court issued a Restitution Order in September, 2008; the government made certain representations to this Court in August, 2009; and the government seized Mr. Abramoff's tax refund in February, 2014.  The question to be decided – one the government apparently does not wish to confront – is whether this seizure was improper.  Given that there is no factual dispute, there can be no "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance [Mr. Abramoff's] position in [this] matter." Dist. of Columbia Rules of Prof'l Conduct, Rule 1.9 cmt. 3 (provision quoted by the government in its motion, which interprets "substantially related" in the Rule 1.9 private side-switching context); *Brown v. Dist. of Columbia Bd. of Zoning Adjustment*, 486 A.2d 37, 50 (D.C. 1984) (noting that the "'substantially related' test is basically the same for private side-switching and DR 9-101(B) revolving door cases," and holding that, "the court has to determine whether [potential information obtained by counsel while employed by the government] is relevant to the issues raised in the litigation pending against the [government]").  It simply is not possible for counsel to have learned anything in 2007, while at the Department of Justice, that could have any risk, much less a "substantial risk," of benefitting Mr. Abramoff in the instant mater.[2]

---

[2] The government's rather tortured and fanciful hypothetical that perhaps counsel, in preparing Mr. Abramoff for a potential cross-examination, explored with Mr. Abramoff his financial assets, and could therefore have gained knowledge regarding "the likelihood of recovering assets from Mr. Abramoff" (Government Mot. For Order to Show Cause at 7-8) is without any factual

Case 1:06-cr-00001-ESH   Document 74   Filed 06/17/14   Page 4 of 9

Finally, the government's vaguely Rumsfeldian "argument" that counsel "may know what the Government does not know on the subject" (Government Mot. at 8) is so abstract as to defy a cogent response. That the government would rely on such banality in support of its argument is yet further evidence that the instant Motion is frivolous.

The cases cited by the government in its Motion provide it no help. First, the government ignores the <u>third element</u> of the *Brown* test and does not even seek to satisfy it. The government quotes *Brown* at length, emboldening the first two elements – factual-context overlap and inference that confidential information was obtained. The government then spends a few paragraphs in its application section trying to satisfy the first two elements, by describing generally the Safavian matter and potential confidential information potentially learned from it (albeit weakly). But the government does not even attempt to show how the third element enunciated in *Brown* is satisfied; namely, how the purported confidential information is "*relevant to the issues raised in the [tax-refund] litigation pending against the former client [the government]*." *Brown*, 486 A.2d at 50 (emphasis added); *see also id.* at 48-49 ("As we see it, therefore – and here is the key to this case – only if specific information (as distinct from general agency expertise or contacts) that a former government lawyer may have had access to in one matter is *likely to be useful in a subsequent matter*, will there be a reasonable possibility of the particular improprieties that DR 9-101(B) is intended to forestall." (emphasis added)); *Headfirst Baseball LLC v. Elwood*, No. 13-536, 2013 WL 6148077, *13 (D.D.C. Nov. 22, 2013)

---

basis and, even if true, completely unhelpful to its argument. First, it was never contemplated that Mr. Abramoff would ever testify against Mr. Safavian, so there was no need to prepare Mr. Abramoff for a cross-examination which would never occur. Second, and far more to the point, the instant matter *has nothing to do with the recovery of any undisclosed assets from Mr. Abramoff.* It is simply about whether the government's February, 2014, seizure of Mr. Abramoff's tax refund was lawful.

(interpreting Rule 1.9 and holding, "the 'plaintiff still must plead facts showing that information from the first matter "might be useful in the second"' (citation omitted)). The government fails to even suggest, much less show, how any confidential information gleaned "would materially advance [Mr. Abramoff's] position in the subsequent matter [tax-refund litigation]." *See* Rule 1.9 cmt. 3.

The government apparently fails to recognize that disqualifying counsel is an extraordinary measure that should only rarely be granted. *See United States v. Phillip Morris, Inc.*, 312 F. Supp. 2d 27, 43-44 (D.D.C. 2004) ("This Court is well aware that disqualification of counsel is 'a drastic measure which courts should hesitate to impose except when absolutely necessary,' . . . . There is no question that 'a party's choice of counsel is entitled to substantial deference' under our system of justice. Indeed, it is one of our most cherished privileges. For that reason permitting a litigant to retain its chosen counsel is a vitally important interest to be evaluated against disqualification and violation of ethical rules. *Moreover, courts have recognized the sad reality that disqualification motions have become increasingly popular and must be viewed 'with cautious scrutiny' given their use for 'purely strategic purposes.'*" (emphasis added; citations omitted)).

Because "no reasonable person could infer that [counsel] may have had [based on counsel's prior DOJ employment] access to information legally relevant to, or otherwise useful in the [instant matter before the Court]" the government has failed to make a *prima facie* showing that the two matters are substantially related. *Brown*, 486 A.2d at 50. Therefore, the Court should deny the government's Motion without a hearing.

## II. The Government Brought Its Motion for Purely Tactical Reasons

In its Motion, the government cites May 27, 2014, as the date that counsel filed his

appearance in this matter, suggesting that it has timely objected to Counsel's appearance in this matter. This is hardly the case. The government has been aware since February 21, 2014, that counsel had been retained in this matter. Within days of this initial communication, counsel and the government discussed counsel's prior involvement in the Safavian prosecution. The government was also aware why counsel believed this engagement – to negotiate the return of Mr. Abramoff's tax refund – did not pose any conflict. Despite months of phone calls and emails between counsel and the government, the government never, prior to the filing of the instant Motion, indicated that it intended to object to counsel's appearance in this matter.[3]

The government's filing of this Motion at this late date severely prejudices Mr. Abramoff for several reasons. First, had the government indicated its objection to counsel's appearance early on, Mr. Abramoff could have made a determination about whether he wished to continue with present counsel – even though doing so would necessitate a potentially time-consuming and expensive dispute with the government about a subsidiary issue – or alternatively whether he would prefer to retain new counsel. Now, after Mr. Abramoff has incurred several months of legal fees while his present counsel has studied the record, analyzed relevant legal issues, and drafted relevant pleadings, it would be costly and unduly time-consuming for Mr. Abramoff to start over with new counsel.

The government's filing of the instant Motion, along with the Request to Stay the Briefing Schedule for the defendant's Motion, further prejudices Mr. Abramoff because filing it now, after having stayed silent for months, causes still further delay in the resolution of this

---

[3] Indeed, the first time the government ever indicated any reservation whatsoever was during a meeting on May 12, 2014 – three months after the government was aware of counsel's representation of Mr. Abramoff. And even at that meeting, the government said only that it was "considering" raising the propriety of representation with the Court. The government never indicated that it would seek counsel's disqualification.

matter. The status quo unquestionably benefits the government. The government has Mr. Abramoff's tax refund. As the government well knows, Mr. Abramoff desperately needs this money to pay the State of Maryland and his other creditors. Soon, as a result of Mr. Abramoff's inability to pay his State taxes, he will lose his ability to renew the registration of his car, which he must do by August, 2014.[4]

The government's waiting until the 11th hour to file this Motion, and to seek a stay of the briefing on the defendant's Motion for Return of Funds, is a transparent attempt to run out the clock, run up Mr. Abramoff's attorney fees, and maximize the pain to be inflicted on Mr. Abramoff. The use of Motions to Disqualify for purely tactical advantage is a concern that has been recognized by the Courts. Indeed, every one of the abuses contemplated by the *Brown* Court has been exhibited by the government in connection with the instant filing:

> If a party who seeks disqualification need not show even a reasonable possibility that an actual impropriety, based on the likely abuse of government-developed information, has taken place, we would invite disqualification motions based entirely on hypothesis and innuendo. We would encourage time-consuming motions made for purely tactical reasons, at great cost to litigants and the courts. We would encourage litigants to convert lawsuits into disciplinary inquiries when there is no reasonable possibility that the underlying proceeding is tainted, and thus would permit litigants, unfairly, to avoid the merits of a case by attacking opponent's counsel instead.

*Brown*, 486 A.2d at 49 n.16 (citations omitted). *See also Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 131-32 (D.D.C. 1994) ("[T]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and *any tactical abuse underlying a disqualification proceeding* against the fundamental principle that the fair resolution of disputes within our

---

[4] As referenced in his Motion, Mr. Abramoff's ability to drive is on the verge of being revoked, thus severely impacting his ability to earn a living and, ironically, pay the restitution that the government is so intent on obtaining.

adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest." (emphasis added) (quoting *Allen v. Academic Games League of Am., Inc.*, 831 F. Supp. 785, 789 (C.D. Cal. 1993))).

### III.  Conclusion

The government filed this Motion despite its inability to cite a single fact that would justify its concerns, and after months of refusing to commit itself as to whether it might agree to voluntarily negotiate the return of Mr. Abramoff's tax refund, thereby forcing counsel to file a Motion for the Return of Funds.  The government clearly would prefer to drag this matter out as long as possible, in the hopes of exhausting Mr. Abramoff's meager resources, thereby causing him to surrender his interest in his money due to a lack of funds to pay for counsel.  As the government well knows, Mr. Abramoff survives in a financially precarious state.  He must support his family, and he must pay restitution every month, as mandated by the Court.  Although able to borrow some funds to pay for present counsel, that money must be paid back and, because the government has forced Mr. Abramoff to not only litigate the issue over the return of his funds, but now also litigate the question of whether he may have counsel of his choice, Mr. Abramoff's legal fees have significantly exceeded expectations.  This scenario, we submit, has hardly been lost on the government.

For all of the foregoing reasons, the government's Motion is frivolous and constitutes a tactical abuse.  We respectfully request that the Court deny it on its papers, and without a hearing.  We further request that the Court, pursuant to its inherent authority, impose attorney fees on the government for forcing the defense to file a response to a Motion clearly filed for purely tactical reasons. Finally, the defense respectfully requests that the Court order the Government to file an expedited response to the outstanding Motion for Return of Seized Funds,

which was filed May 27, 2014.  The government should not be permitted to continue delaying this matter.

Dated: June 17, 2014                             Respectfully submitted,


   /s/ *Peter R. Zeidenberg*
Peter R. Zeidenberg  (D.C. Bar No. 440803)
Arent Fox LLP
1717 K Street, NW
Washington, DC  20036
202.857.6139